IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

**DAVID RHODES,**

      **Plaintiff,**

v.                                                                                 No. 21-cv-01128 JCH/SMV

**REGENTS OF THE UNIVERSITY**
**OF NEW MEXICO, GARNETT S.**
**STOKES, Individually, and MITZI**
**M. MONTOYA, Individually.**

      **Defendants.**

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Defendants Garnett S. Stokes and Mitzi M. Montoya's (collectively, "Individual Defendants") *Motion to Dismiss Plaintiff's Claims Against the Individual Defendants* (ECF No. 10). The Individual Defendants assert that they are entitled to qualified immunity on Plaintiff David Rhodes's claim that they violated his Fourteenth Amendment right to procedural due process. Because the law has not clearly established that the Individual Defendants' acts were unconstitutional, the Court will grant the motion.

**I.    STANDARD**

On a motion to dismiss, a federal court generally assesses "the legal sufficiency of the allegations contained within the four corners of the complaint." *Archuleta v. Wagner*, 523 F.3d 1278, 1281 (10th Cir. 2008). If the court is presented with but does not exclude matters outside of the pleadings, then the court must treat the motion as one for summary judgment. Fed. R. Civ. P. 12(d). The court has broad discretion to accept or reject materials beyond the pleadings. *See Lowe v. Town of Fairland*, 143 F.3d 1378, 1381 (10th Cir. 1998). And the court need not convert the

1

motion to one for summary judgment if the court considers documents that are referred to in the complaint, indisputably authentic, and central to the plaintiff's claim. *See Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007); *Pace v. Swerdlow*, 519 F.3d 1067, 1072 (10th Cir. 2008) (citing *Utah Gospel Mission v. Salt Lake City Corp.*, 425 F.3d 1249, 1253-54 (10th Cir. 2005)).

Turning to the complaint, the court "should disregard all conclusory statements of law and consider whether the remaining specific factual allegations, if assumed to be true, plausibly suggest the defendant is liable." *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011). The complaint "does not need detailed factual allegations," but "a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In addition to assuming the truth of the specific factual allegations, the court should view the facts in the light most favorable to the nonmoving party and allow all reasonable inferences in that party's favor. *Archuleta*, 523 F.3d at 1283.

## II.     FACTUAL AND PROCEDURAL BACKGROUND

Defendant Regents of the University of New Mexico ("UNM") hired David Rhodes as a technical analyst in January 2018. Compl. ¶ 1 (ECF No. 1-1). A year and a half later, in June 2019, UNM placed Rhodes on administrative leave. *Id.* ¶ 11. And three months after that, in September 2019, UNM terminated Rhodes "without cause." *Id.* ¶ 1. UNM justified the termination by claiming that Rhodes had attempted to lessen the seriousness of his criminal history. *See id*. ¶ 11.

Rhodes timely appealed the decision to a Peer Review Committee ("the Peer Committee"). *Id*. ¶ 12. The Peer Committee held a hearing in November 2020. *Id.* Then, in January 2021, the Peer Committee reversed the dismissal and ordered Rhodes to be reinstated. *Id*. ¶ 13.

In February 2021, UNM President Garnett Stokes and UNM Vice President of Human Resources Dorothy Anderson met to discuss Rhodes's termination and the decision of the Peer Committee. *Id.* ¶ 19. Rhodes also suggests that Dean Mitzi Montoya met with President Stokes. *See id.* ¶ 5. President Stokes and Dean Montoya neither reinstated Rhodes nor explained their refusal to do so. *Id.* ¶ 20.

Instead, Dean Montoya appealed the Peer Committee's decision to President Stokes on February 28, 2021. *Id.* ¶ 13. On March 28, 2021, Rhodes responded by asserting that Dean Montoya did not have the authority to appeal the Peer Committee's decision. *Id.* ¶¶ 14, 16. Rhodes renewed his objection—and demanded reinstatement—in a June 9, 2021, letter from his attorney. *Id.* ¶ 14. Rhodes did not receive a reply to his March response or his June letter. *Id.* He remained without reinstatement. *Id.*

So, on October 12, 2021, Rhodes filed a complaint in the New Mexico Second Judicial District Court. *Id.* at 1. Along with state-law claims against UNM, *see id.* ¶¶ 10-28, Rhodes brought a claim under 42 U.S.C. § 1983 alleging that President Stokes and Dean Montoya violated his Fourteenth Amendment right to procedural due process. *See id.* ¶¶ 29-50. UNM and the Individual Defendants filed a notice of removal to this Court on November 24, 2021. Notice of Removal (ECF No. 1). The Individual Defendants then moved to dismiss Rhodes's constitutional claim based on qualified immunity. *See* Mot. to Dismiss 2 (ECF No. 10).[1]

---

[1] In their briefing, the parties informed the Court that on December 21, 2021, President Stokes granted Dean Montoya's appeal and overturned the Peer Committee's decision to reinstate Rhodes. *See* Mot. to Dismiss 4 n.4 (ECF No. 10); Pl.'s Resp. 1 n.1 (ECF No. 14). But the Court will not consider this final development. The Court learned of President Stokes's decision from beyond the pleadings, so consideration would convert this motion to one for summary judgment. *See Utah Gospel Mission*, 425 F.3d at 1253. Because the Court declines conversion, the Court will consider only the facts at the time the pleadings closed. Said otherwise, the Court proceeds from the perspective of December 13, 2021, when the Defendants filed their answer, the appeal remained unresolved, and Rhodes remained without reinstatement. *See* Def.'s Am. Answer to Compl. ¶ 37 (ECF No. 6); Compl. ¶ 14 (ECF No. 1-1).

3

### III.     LEGAL BACKGROUND

To overcome qualified immunity, a plaintiff has the burden to show "(1) that the official violated a statutory or constitutional right, *and* (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011) (emphasis added). A court may generally "address the two prongs of the qualified-immunity analysis in either order." *Cummings v. Dean*, 913 F.3d 1227, 1239 (10th Cir. 2019); *see Camreta v. Greene*, 563 U.S. 692, 707 (2011). In certain circumstances, however, the Tenth Circuit instructs courts to grant qualified immunity based only on the second prong. *See Kerns v. Bader*, 663 F.3d 1173, 1180-81 (10th Cir. 2011). Three of these circumstances exist when "deciding the constitutional question requires 'an uncertain interpretation of state law,'" when "'qualified immunity is asserted at the pleading stage' and 'the precise factual basis for the . . . claim . . . may be hard to identify,'" and when "it is plain that a constitutional right is not clearly established but far from obvious whether in fact there is such a right." *Id.* (alterations in original) (quoting *Pearson v. Callahan*, 555 U.S. 223, 237, 238 (2009)).

As for the second prong, a plaintiff must demonstrate that a defendant's conduct "violate[d] clearly established statutory or constitutional rights of which a reasonable person would have known." *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (quoting *Pearson*, 555 U.S. at 231). A right is "clearly established" if there is "an on-point Supreme Court or Tenth Circuit decision establishing the unlawfulness of the alleged conduct" or if "the clearly established weight of authority from other courts supports the plaintiffs' assertions about the state of the law." *Hunt v. Montano*, 39 F.4th 1270, 1284 (10th Cir. 2022).

Put another way, the "salient question" is whether contemporaneous law gave defendants fair warning that their treatment of the plaintiff was unconstitutional. *Id.* Previous cases need not

4

be precisely on point or even "fundamentally similar" to put an official on notice. *Hope v. Pelzer*, 536 U.S. 730, 741 (2002); *see Doe v. Woodard*, 912 F.3d 1278, 1289 (10th Cir. 2019). At the same time, a court's inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition." *Mullenix*, 577 U.S. at 12 (quoting *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004) (per curiam)).

IV.   ANALYSIS

The Fourteenth Amendment guarantees that "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. To prove a violation of his Fourteenth Amendment right to procedural due process, Rhodes must show (1) that a state actor deprived him of a liberty or property interest, and (2) that Rhodes did not receive constitutionally sufficient procedures. *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989). The Individual Defendants concede that Rhodes had a property interest in his employment. *See* Mot. to Dismiss 6 (ECF No. 10). Thus, Rhodes must show that the Individual Defendants terminated his employment without constitutionally sufficient procedures.

A public employer usually must offer "'some kind of a hearing' prior to the discharge of an employee who has a constitutionally protected property interest in his employment." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542, 546 (1985) (quoting *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 570 n.7 (1972)) ("The tenured public employee is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story."). If the pre-termination hearing meets only minimum constitutional requirements, then the employee must receive "a full-blown, adversarial post-termination hearing, held at a meaningful time." *Calhoun v. Gaines*, 982 F. 2d 1470, 1477 (10th Cir. 1992).

Rhodes claims that the Individual Defendants did not provide him "with any meaningful pre or post termination hearing." Compl. ¶ 38 (ECF No. 1-1). But Rhodes does not provide specific facts about the constitutional inadequacy of the pre-termination procedures. *See id.* Nor does Rhodes make any legal arguments about the pre-termination procedures in his response to this motion. *See* Pl.'s Resp. (ECF No. 14).

The Court will thus disregard Rhodes's claim about the inadequacy of pre-termination procedures. The claim is a legal conclusion that is unsupported by specific factual allegations. *See Collins*, 656 F.3d at 1214. In addition, Rhodes waived the issue of pre-termination inadequacy by "failing to make any argument or cite any authority to support his assertion." *United States v. Hardwell*, 80 F.3d 1471, 1492 (10th Cir. 1996).

As for the inadequacy of post-termination procedures, however, Rhodes advances four reasons why the Individual Defendants failed their constitutional obligations. First, Rhodes asserts that President Stokes violated Rhodes's right to an impartial hearing when President Stokes met with Vice President Anderson outside of Rhodes's presence. Compl. ¶ 19 (ECF No. 1-1); Pl.'s Resp. 2-3 (ECF No. 14). Rhodes's second argument is that Dean Montoya lacked the authority to appeal the Peer Committee's decision. Compl. ¶ 14-17, 20 (ECF No. 1-1); Pl.'s Resp. 2-3 (ECF No. 14). Third, Rhodes contends that President Stokes unduly delayed a decision on Dean Montoya's appeal. Compl. ¶ 37, 38, 42 (ECF No. 1-1); Pl's Resp. 3-4, 6 (ECF No. 14). And for his fourth argument, Rhodes claims that he was automatically reinstated under the Regents Rules on June 1, 2022, and therefore the Individual Defendants rendered the post-termination process a sham when they did not reinstate him. Compl. ¶ 18, 38, 42 (ECF No. 1-1); Pl's Resp. 3-4, 6 (ECF No. 14). The Court considers whether Rhodes has met his burden to overcome qualified immunity for each of the four assertions.

### A. The Ex Parte Meeting

Rhodes's first argument is that President Stokes's meeting with Vice President Anderson violated Rhodes's right to an impartial hearing. Generally, "[a]n impartial tribunal is an essential element of a due process hearing." *Mangels v. Pena*, 789 F.2d 836, 838 (10th Cir. 1986) (quoting *Miller v. City of Mission*, 705 F.2d 368, 372 (10th Cir. 1983)). But "'[t]he mere exposure to evidence presented in nonadversary investigative procedures is insufficient in itself to impugn the fairness' of a later adversary hearing." *Id.* (quoting *Withrow v. Larkin*, 421 U.S. 35, 55 (1975)). Tribunals receive a presumption of honesty and integrity. *Riggins v. Goodman*, 572 F.3d 1101, 1112 (10th Cir. 2009) (citing *Withrow*, 421 U.S. at 47). As a result, "there must be some substantial countervailing reason to conclude that a decisionmaker is actually biased with respect to factual issues being adjudicated." *Mangels*, 789 F.2d at 838 (citing *Roberts v. Morton*, 549 F.2d 158, 164 (10th Cir. 1976)).

To support the claim of unconstitutional bias, Rhodes cites *Cacy v. City of Chickasha*, 124 F.3d 216, 1997 WL 537864, at *4 (10th Cir. 1997) (unpublished table opinion). But that case only recites the general principle that constitutional due process includes "a hearing before an unbiased tribunal." *Id.* On its facts, *Cacy* found no bias giving rise to a due process violation. *See id.*

Other cases cut against Rhodes's argument. In *Mangels v. Pena*, for example, a civil service commission reviewed the termination of firefighters. 789 F.2d at 837. Prior to a hearing, the commission received advance copies of an investigatory report that included hearsay statements and polygraph examination results. *Id.* The Tenth Circuit held that this exposure did not unconstitutionally tarnish the hearings. *See id.* at 838.

So too in *Riggins v. Goodman*, a police chief recommended the termination of a police officer to a human resources director and city manager. 572 F.3d at 1104. The latter officials

approved the recommendation. *Id.* at 1105. The terminated police officer appealed first to the police chief, then to the human resources director, and finally to the city manager. *Id.* at 1105-06. All three officials affirmed the termination. *Id.* The Tenth Circuit held that the officials' communications with each other and their roles in both the initial decisions and the appeals did not cause a constitutional violation. *See id.* at 1112-13.

And in *Waide v. City of Okla. City*, a department director fired a municipal employee. *See* No. 16-cv-00817, 2019 WL 1029543, at *3 (W.D. Okla. Mar. 4, 2019). The employee appealed her termination to a review board, who recommended reinstatement. *Id.* Nevertheless, a city manager reversed the review board and cemented the employee's termination. *Id.* The employee claimed that the procedures were biased because the city manager received extra-record materials and the employee's former peers had *ex parte* communications with the review board. *Id.* at *6. Citing *Riggins*, the district court rejected the employee's due process challenge. *See id.*

Though some facts distinguish these cases from the present one, their similarities make it "far from obvious" that President Stokes and Vice President Anderson's meeting violated Rhodes's constitutional right to an unbiased hearing. *See Kerns*, 663 F.3d at 1180-81 (quoting *Pearson*, 555 U.S. at 237). And here, "qualified immunity is asserted at the pleading stage" where "the precise factual basis for the . . . claim [is] hard to identify." *Id.* (first alteration in original) (quoting *Pearson*, 555 U.S. at 238). The Court would need more facts proving bias before the Court could hold that the Individual Defendants violated Rhodes's constitutional right on this ground. The Court thus proceeds to the second prong of the qualified immunity analysis.

On the second prong, the similarities between the authorities discussed and the present case show that a reasonable officer in President Stokes's position would have lacked fair notice that the meeting violated a clearly established constitutional right to an impartial hearing. *See Hunt*, 39

F.4th at 1284. Thus, without determining whether a constitutional violation occurred, the Court holds that President Stokes and Vice President Anderson's meeting did not violate a clearly established constitutional right.

    **B.    Dean Montoya's Appeal**

Rhodes's second argument is that Dean Montoya denied Rhodes due process because Dean Montoya did not have the authority to appeal the Peer Committee's decision. This argument turns on an interpretation of the UNM Administrative Policies and Procedures Manual ("UNM Policies") and the "Board of Regents Policy Manual" ("Regents Rules").[2] The UNM Policies state that the University President and the Board of Regents accept appeals from the Peer Committee "only in extraordinary cases, such as those where proper procedures have not been followed, where the decision appears to be unsupported by the facts, or where the decision appears to violate University policy." Compl. ¶ 6 (ECF No. 1-1) (quoting UNM Policies § 3215(10.2)). And the Regents Rules provide, "Faculty, staff, or students affected by a decision of the administration, faculty, student government, or hearing board may appeal the decision to the Board of Regents." *Id.* (quoting Regents Rules § 1(1.5)).

In Rhodes's view, the Peer Committee's decision was not an "extraordinary case" that could justify an appeal. *See* Pl.'s Resp. 2-3 (ECF No. 14); Compl. ¶ 17 (ECF No. 1-1). Rhodes adds that Dean Montoya did not hold her position when Rhodes was fired, so Dean Montoya was not "affected by" the termination in an individual capacity. *See* Pl.'s Resp. 2-3 (ECF No. 14); Compl. ¶ 17 (ECF No. 1-1). Finally, Rhodes contends that Dean Montoya appealed the Peer

---

[2] Rhodes's Complaint cites excerpts from the two manuals, but neither party provided the complete documents for the Court's reference. *See* Compl. ¶ 6 (ECF No. 1-1). The Individual Defendants do not dispute the existence or accuracy of the quoted excerpts. *See* Defs.' Am. Answer to Compl. ¶ 6 (ECF No. 6). The Court will therefore analyze the rules based on the rules as presented in the complaint. *See Pace*, 519 F.3d at 1072 (citing *Utah Gospel Mission*, 425 F.3d at 1253-54).

Committee's decision "on behalf of the Anderson School on Management" and not as an individual "faculty, staff, or student." *See* Pl.'s Resp. 2-3 (ECF No. 14); Compl. ¶ 17 (ECF No. 1-1). For these reasons, Rhodes concludes that Dean Montoya's failure to follow the UNM Policies and the Regents Rules contributed to the violation of Rhodes's due process rights. *See* Pl.'s Resp. 3 (ECF No. 14); Compl. ¶ 43 (ECF No. 1-1).

But a violation of university rules is not a violation of the Constitution. *See Guttman v. Khalsa*, 669 F.3d 1101, 1115 (10th Cir. 2012); *Ward v. Anderson*, 494 F.3d 929, 935 (10th Cir. 2007) ("[A] failure to comply with state or local procedural requirements does not necessarily constitute a denial of due process; the alleged violation must result in a procedure which itself falls short of standards derived from the Due Process Clause." (alteration in original) (quoting *Hennigh v. City of Shawnee*, 155 F.3d 1249, 1256 (10th Cir. 1998))); *see also de Llano v. Berglund*, 282 F.3d 1031, 1035 (8th Cir. 2002) (holding no constitutional violation occurred when university president violated university rules by rejecting committee's decision to reinstate faculty member). Thus, even if Rhodes is correct that Dean Montoya lacked the authority to appeal, Dean Montoya's appeal did not violate Rhodes's constitutional rights. And, in the alternative, Rhodes has failed to establish that the Individual Defendants violated Rhodes's clearly established constitutional right to due process by permitting Dean Montoya's appeal.

**C.     The Delay**

Rhodes's third argument is that President Stokes denied Rhodes due process by unduly delaying a decision on Dean Montoya's appeal. Rhodes identified an eight-month delay between the Peer Committee's decision on January 29, 2021, and Rhodes's court filing on October 12,

10

2021. *See* Compl. ¶ 37 (ECF No. 1-1). The delay was closer to eleven months when the pleadings closed on December 13, 2021.[3] *See* Defs.' Am. Answer to Compl. ¶ 37 (ECF No. 6).

It is true that "[a]t some point, a delay in the post-termination hearing would become a constitutional violation." *Loudermill*, 470 U.S. at 547. But the Supreme Court has not provided a bright-line rule for when a delay becomes unconstitutional. *Cleveland Board of Education v. Loudermill* established that a nine-month adjudication of a post-termination hearing was *not* unconstitutionally lengthy *per se*. *Id*. What is more, *Loudermill* suggests that a plaintiff should explain why a delay is unreasonable. *See id.* ("Yet Loudermill offers no indication that his wait was unreasonably prolonged other than the fact that it took nine months.").

Following *Loudermill*, courts have rejected constitutional challenges to a range of delays. *See, e.g.*, *Collvins v. Hackford*, 523 F. App'x 515, 519-20 (10th Cir. 2013) (holding that eleven-month delay between initial request for post-suspension review and post-suspension hearing did not violate clearly established law); *Cibas v. Lockwood*, No. 90-cv-00341, 1994 WL 924145, at *20, *22 (D.N.M. Aug. 22, 1994) (nearly two-year delay); *see also Columbian Fin. Corp. v. Stork*, 811 F.3d 390, 396, 401-02 (10th Cir. 2016) (three-year-and-eight-month delay in context of seizure of bank assets); *Collins v. Sch. Bd. of Dade Cnty.*, 981 F.2d 1203, 1205-06 (11th Cir. 1993) (per curiam) (nineteen-month delay).

---

[3] Rhodes probably appealed his termination to the Peer Committee in September 2019. *See* Compl. ¶¶ 6, 11, 12 (ECF No. 1-1) (quoting UNM Policies § 3215(10)) (showing that Rhodes was terminated in September 2019, that UNM Policies allowed an employee to appeal within ten days, and that Rhodes timely appealed). Thus, two years and three months was approximately the time between Rhodes's request for Peer Committee review and the close of the pleadings. Rhodes, however, identified the Peer Committee's decision as the start of the delay. *See* Compl. ¶ 37 (ECF No. 1-1) ("In this case, no decision has been made for more than eight (8) months *after the peer review committee ordered Plaintiff reinstated*." (emphasis added)); *see also* Pl.'s Resp. 4 (ECF No. 14) ("Plaintiff is complaining about . . . a failure to implement the Peer Review decision in a reasonable time."). For this reason, the Court will proceed by analyzing an eleven-month delay and rely on cases that consider the delay from the request for post-termination review to a final decision. *See also supra* n.1 (explaining why the Court will only consider the delay through the close of the pleadings).

11

Rhodes has not cited a Supreme Court or Tenth Circuit case establishing that an appeal's eight-month (or even eleven-month) pendency after post-termination review is unconstitutional. Nor has Rhodes explained why the delay is particularly unreasonable in his circumstances.[4]

It is "far from obvious" that the eleven-month delay violated constitutional due process. *See Kerns*, 663 F.3d at 1180-81 (quoting *Pearson*, 555 U.S. at 237). The Court thus proceeds to the second prong of the qualified immunity analysis. Because courts have held that longer delays do not violate clearly established law, an eleven-month delay—without more—cannot do so either. Without determining whether a constitutional violation occurred, the Court holds that President Stokes's eleven-month delay did not violate clearly established law.

### D. The Automatic Reinstatement

Rhodes's final argument is that the Regents Rules automatically reinstated him by June 1, 2021. As a result, the Individual Defendants rendered the Peer Committee hearing a sham when they subsequently failed to reinstate Rhodes. Rhodes's argument derives from an interpretation of the UNM Policies and the Regents Rules.

The UNM Policies state, "The results of a peer hearing may be appealed to the University President *and* the Board of Regents." Compl. ¶ 6 (ECF No. 1-1) (emphasis added) (quoting UNM Policies § 3215(10.2)). The Regents Rules add, "The Board shall render its final decision within 90 days from the date the appeal was filed . . . . If no decision is rendered within the deadline, the appeal shall be deemed denied." *See id.* (quoting Regents Rules § 1(1.5)).

---

[4] Rhodes alludes to President Stokes violating custom by not deciding an appeal within two months. *See* Compl. ¶ 37 (ECF No. 1-1) ("[T]he normal or usual time for Stokes to make a decision on an appeal is two months after the appeal is filed."). But Rhodes has not explained why a violation of custom should amount to a violation of the Constitution. And the Court sees no reason why custom would create constitutional standards when state law and university procedures do not do so. *See supra* Section IV.B.

The conjunctive use of "and" might suggest a singular appeal. Said otherwise, perhaps the University President and the Board of Regents—acting together—oversee just one appeal. If that is true, then the ninety-day deadline would apply to the appeal before the President *and* the Board. And if the President *and* the Board do not decide the appeal within ninety days, then the appeal would be denied.

Under this interpretation, Dean Montoya's appeal would be denied on May 30, 2021—ninety days after Dean Montoya filed the appeal on February 28, 2021.[5] Consequently, the Regents Rules would have automatically reinstated Rhodes on that day.

Rhodes does not cite any cases with an employee who is victorious in a post-termination hearing—and any appeals—but the employer nevertheless refuses reinstatement. Instead, Rhodes's leading case is *Calhoun v. Gaines*, 982 F.2d 1470 (10th Cir. 1992). There, the Tenth Circuit denied qualified immunity to an employer who fired an employee without any pre- or post-termination hearings. *See id.* at 1473, 1476-77.

*Calhoun* is distinguishable because Rhodes received post-termination procedures. Still, *Calhoun* stands for the general principal that due process requires a post-termination hearing. Perhaps implicit in this requirement is a guarantee that a victorious employee can enforce the finalized hearing results. In other words, an employee might have a constitutional right to an employer honoring the finalized results of the post-termination hearing. As Rhodes describes, "the hearing is meaningless when the decision is not implemented." Pl.'s Resp. 6 (ECF No. 14).

But two reasons counsel against the Court deciding the constitutional issue—much less in Rhodes's favor. First, if state remedies remain available to an employee who has suffered a

---

[5] Rhodes identifies "June 1, 2021, at the latest" as the date of automatic reinstatement. *See* Compl. ¶ 18 (ECF No. 1-1).

13

deprivation of property because of an employer's unauthorized deviation from established state procedure, then the employee cannot claim a due process violation. *See Larson v. City of Fergus Falls*, 229 F.3d 692, 697-98 (8th Cir. 2000) (holding no due process violation when terminated employee could have petitioned for writ of mandamus to compel reinstatement); *Lee v. Hutson*, 810 F.2d 1030, 1032-33 (11th Cir. 1987) (affirming dismissal of terminated employee's due process claims because of availability of certiorari in state court); *see also Parratt v. Taylor*, 451 U.S. 527, 543-44 (1981).

Rhodes has neither petitioned a New Mexico court for a writ of mandamus to enforce reinstatement nor explained why such a remedy is unavailable. *See generally Alacron v. Albuquerque Pub. Schs. Bd. of Educ.*, 2018-NMCA-021, ¶¶ 14, 35-38, 413 P.3d 507 (affirming issuance of writ of mandamus that directed procedures for discharge hearing and that reinstated employee during pendency of hearing). Thus, even if the Regents Rules automatically reinstated Rhodes, it is "far from obvious" that Rhodes has proven inadequate due process. *See Kerns*, 663 F.3d at 1180-81 (quoting *Pearson*, 555 U.S. at 237).

Second, Rhodes's interpretation of the UNM Policies and the Regents Rules is not certain. The UNM Policies also state, "If an appeal is accepted, it will first go to the University President. The Board of Regents has the discretion to review the University President's decision." Compl. ¶ 6 (ECF No. 1-1) (quoting UNM Policies § 3215(10.2)). This language suggests two appeals: a first appeal to the President and a second one to the Board. If this is true, then the ninety-day deadline would apply only to the latter appeal before the Board. And the university manuals do not provide a separate deadline for appeals to the President. Thus, under this interpretation, President Stokes did not miss a deadline and Rhodes is not automatically reinstated.

14

The Court need not decide which interpretation is correct. Instead, the Court recognizes that Rhodes's due process claim based on automatic reinstatement requires "an uncertain interpretation of state law." *See Kerns*, 663 F.3d at 1180 (quoting *Pearson*, 555 U.S. at 238). In sum, the Court has two reasons to avoid the merits of Rhodes's constitutional argument and proceed to the second prong of the qualified immunity analysis. *See id.* at 1180-81.

Under the second prong, Rhodes's invocation of the ninety-day deadline does not prove a violation of clearly established law. First, Rhodes did not distinguish the cases that require a lack of state court remedies before a plaintiff can claim inadequate due process. Second, if a state law is subject to multiple reasonable interpretations, then a plaintiff cannot rely on the law as clearly established. *See Greene v. Barrett*, 174 F.3d, 1136, 1142-43 (10th Cir. 1999). All in all, without determining whether a constitutional violation occurred, the Court holds that Rhodes's suggested interpretation and application of the UNM Policies and the Regency Rules do not prove that the Individual Defendants violated clearly established law.

## V.  CONCLUSION

Rhodes offered four reasons why President Stokes and Dean Montoya provided inadequate due process. But all four reasons fail to show a violation of clearly established law. The Individual Defendants are therefore entitled to qualified immunity. The Court grants their motion and dismisses Rhodes's Fourteenth Amendment claim.

The only claims remaining in the case are state law claims. The Court declines supplemental jurisdiction and remands the state law claims to the Second Judicial District Court, Bernalillo County, New Mexico. *See* 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . the district court has dismissed all claims over which it has original jurisdiction . . . .").

**IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED** that

(1)  Defendants Garnett S. Stokes and Mitzi M. Montoya's *Motion to Dismiss Plaintiff's Claim Against the Individual Defendants* (**ECF No. 10**) is **GRANTED**,

(2)  Plaintiff David Rhodes's federal constitutional claim against Defendants Garnett S. Stokes and Mitzi M. Montoya is **DISMISSED WITH PREJUDICE**, and

(3)  The remaining state law claims are **REMANDED** to the Second Judicial District Court, County of Bernalillo, State of New Mexico.

_____
SENIOR UNITED STATES DISTRICT JUDGE